UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA ARCHULETA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 20-cv-4447<br><br>Hon. Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Believing she is entitled to Social Security disability benefits, plaintiff Theresa Archuleta ("Archuleta") filed this suit challenging the Commissioner of Social Security's final decision denying benefits.[1] For the reasons set forth below, the Court affirms the decision of the Commissioner.

**I.    BACKGROUND**

Plaintiff applied for supplemental security income on August 11, 2017, and her claim was initially denied on November 2, 2017. On reconsideration, plaintiff's claim was again denied. In or about July 2018, plaintiff requested a hearing. On January 8, 2019, the ALJ issued a notice of hearing, which was held on May 13, 2019.

On July 25, 2019, Administrative Law Judge Peter Kafkas issued a twenty-two-paged, single-spaced decision in which he concluded that plaintiff was not disabled within the meaning

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi ("Kijakazi") has been automatically substituted as defendant in this matter.

of § 1614(a)(3)(A) of the Social Security Act. Plaintiff timely filed this appeal, and each side requests judgment be entered in her or its favor.

## II. DISCUSSION

An individual denied benefits "after any final decision of the Commissioner of Social Security" may "obtain review of such decision by civil action" filed within 60 days. 42 U.S.C. § 405(g). This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

That section also states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, in considering an appeal, this Court "will affirm a decision on disability benefits if the ALJ supported her conclusion with substantial evidence." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) (quoting *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021)). Substantial evidence "means—and only means—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). In considering whether substantial evidence supports the decision of the Administrative Law Judge, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

The "burden of proving she is disabled" rests with the claimant. *Prill*, 23 F.4th at 746. Pursuant to statute, a person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is considered disabled:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

Thus, to "determine whether a claimant is eligible for disability benefits, an ALJ applies a five-step sequential evaluation process to determine whether a claimant can engage in substantial gainful employment." *Prill*, 23 F.4th at 746. In those five steps, the ALJ considers whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Prill*, 23 F.4th at 747 (citations omitted). The claimant has the burden of proof at the first four steps, and the Commissioner has the burden at the fifth. *Prill*, 23 F.4th at 747.

In this case, the ALJ proceeded through all five steps. Because plaintiff had previously applied for and was denied disability benefits (A.R. 215), the ALJ carefully reviewed and considered several years' worth of records and evidence.[2] At step one, the ALJ concluded that Archuleta had not engaged in substantial employment since her application date. (A.R. 49). At step two, the ALJ concluded that Archuleta has several severe impairments, including mild

---

[2] The Administrative Record ("A.R.") is located at docket entry 10-1 and 10-2.

carpel tunnel syndrome, myofascial pain disorder, fibromyalgia, spine disorder, dysfunction of major joints, obesity, mild depression, mild anxiety/panic disorder and anxiety. (A.R. 49). The ALJ, however, concluded that other impairments (including migraine headaches and hypothyroidism) were not severe. Plaintiff does not take issue with the ALJ's assessment at step two.

At step three, the ALJ concluded that Archuleta does not have an impairment or combination of impairments that meets or exceeds the listings for a severe impairment. The ALJ considered listings for major disfunction of a joint, disorders of the spine and asthma, as well as limitations that are not listed. The ALJ, for example, noted that no listing exists for fibromyalgia, so the ALJ considered something analogous. He said:

> The undersigned also considered the discussion of fibromyalgia in SSR 12-2p. Listing 1.02 was not met or equaled because there is no evidence that the claimant had an inability to ambulate, as she did not require the use of a walker, two crutches, or two canes to assist with ambulation. Moreover, the claimant retains the ability to use her upper and lower extremities effectively. Furthermore, there is no evidence that the claimant has an inability to perform fine and gross movements effectively as there is no evidence that the claimant is not able to prepare a simple meal and feed herself, take care of personal hygiene or finger or handle objects.

(A.R. 52). The ALJ also explained:

> With regard to concentrating, persisting and maintaining pace, the claimant has a moderate limitation. In her function report, she stated that her impairments affected her ability to completes tasks (B2E/7). She stated she could finish what she started and follow written and spoken instructions fine (B2E7). However, in her second function report, she stated that her impairments affect her ability to concentrate and follow instructions (B7E/7). Although she initially did not limit herself in her ability to pay attention, in her next function report, she stated that she could pay attention for less than one hour (B7E/7). She also later stated that while she was 'ok' at following written instructions, she sometimes needed spoken instructions repeated. (B7E/7). Dr. Rao noted that she was able to maintain adequate focus and concentration to complete the session. (B8/R2). Upon testing, the claimant had no difficulty following a three-stage command, doing mental calculations, spelling the word 'world' backwards or counting backwards from 100 by 3s (B8F/3). Dr. Lorenz noted that her concentration and

> attention were normal (B13F/40). Overall, the claimant had no more than a moderate limitation in her ability to concentrate, persist or maintain pace.

(A.R. 53). Plaintiff does not take issue with the ALJ's step-three findings.

At step four, the ALJ concluded that plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, frequently balance and occasionally stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to wetness, concentrated exposure to extreme noise (noise levels above SCO 3), concentrated exposure to excessive vibration, exposure to environmental irritants such as fumes, odors, dusts and gases, concentrated exposure to the use of dangerous moving machinery and concentrated exposure to unprotected heights. The claimant can frequently reach bilaterally, occasional[ly] reach overhead bilaterally, frequently handle bilaterally, frequently finger bilaterally and frequently feel bilaterally. The claimant can understand, remembering [sic] and carry out simple instructions and the claimant would be limited to simple, routine tasks. The claimant can be employed in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting.

(A.R. 54-55). The ALJ spent twelve single-spaced pages explaining how he determined plaintiff's RFC. Plaintiff takes issue with the findings the ALJ made at this step. Plaintiff argues that, in assessing her residual functional capacity, the ALJ failed to account for plaintiff's problems with persistence and pace, failed to consider recent evidence and failed to assess plaintiff's fibromyalgia properly.

Finally, at step five, the ALJ concluded, based on the testimony of a vocational expert and considering plaintiff's "age, education, work experience, and residual functional capacity," that jobs exist for plaintiff in significant numbers in the national economy. (A.R. 68). Accordingly, the ALJ concluded that plaintiff is not disabled.

*Persistence and pace*

As noted above, plaintiff takes issue with the ALJ's assessment of her residual functional capacity. Plaintiff first argues that the ALJ failed to account for plaintiff's limitations with

5

respect to persistence, pace and concentration in assessing plaintiff's residual functional capacity. The Court disagrees.

The ALJ specifically mentioned persistence and pace during the step-four analysis. He said:

> Dr. Rao opined that the claimant's only limitations were moderate limitations in her ability to *maintain persistence to keep up with work demands* and withstand stress (B8F/5). The undersigned finds Dr. Rao's opinion persuasive. Dr. Rao's opinion is consistent with her examination findings and testing, with her steady medication dosage and with her presentation of mild symptoms to her providers.

(A.R. 61) (emphasis added). Although the ALJ did not use the word "pace" in his description, "keep[ing] up with work demands" means essentially the same thing.

As for plaintiff's argument that the ALJ failed to include concentration problems, the Court notes that, at the residual-functional-capacity ("RFC") step, an "ALJ need only include limitations that are supported by the medical record." *Reynolds*, 25 F.4th at 473. Substantial evidence supports the ALJ's conclusion that plaintiff did not have limitations with respect to her ability to concentrate. Dr. Rao noted that plaintiff "was able to maintain adequate focus and concentration to complete the session" and concluded that plaintiff had no impairment with respect to attention and concentration to complete tasks. (A.R. 946 & 948). The ALJ relied on these findings in his assessment of plaintiff's residual functional capacity. (A.R. 59). In addition, the ALJ noted that another examiner, Stacy Lorenz, Psy.D. evaluated plaintiff and concluded she had normal concentration and attention. (A.R. 59).

The Court also disagrees with plaintiff's suggestion that the ALJ failed to account for these issues in the hypothetical to the vocational expert, who was hired to opine as to whether significant jobs exist in the economy for a person with plaintiff's residual functional capacity. Plaintiff argues that her "need to have instructions repeated would result in a decrease in work

6

pace," (Plf. Brief at 8/Docket 12 at 8), but the ALJ's hypothetical accounted for this. Specifically, the ALJ's hypothetical to the vocational expert limited the individual to "understanding, carrying out, remembering no more than simple instructions" and to performing "simple, routine tasks." (A.R. 199). In other words, because the work tasks would be limited to the routine and the simple, plaintiff's pace would not be affected by any occasional need to have verbal instructions repeated. In addition, the hypothetical limited the individual to a "low-stress job" in which "the individual would be allowed to be off task up to 10 percent of the work day in addition to regularly-scheduled breaks." (A.R. 199). These hypothetical restrictions adequately account for plaintiff's limitations with respect to persistence and pace. *See Urbanek v. Saul*, 796 Fed.Appx. 910, 914 (7th Cir. 2019) ("Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record.'") (citations omitted). In any case, to the extent that plaintiff is correct that the hypothetical to the vocational expert failed to encompass these restrictions in a sufficiently precise manner, the Court notes the error would be harmless. The ALJ proceeded to add to the hypothetical a "work environment free of fast-paced production requirements," and the vocational expert still testified that jobs were available. (A.R. 209-210).

*Playing doctor*

Next, plaintiff argues that the ALJ improperly "played doctor" with respect to two pieces of medical evidence: a 2017 X-ray of her wrists and a 2019 X-ray of her lumbar spine. Plaintiff argues the ALJ "played doctor" by interpreting the results himself rather than asking a physician to review the records. The Court disagrees.

First, although a doctor, Mina Khorshidi, M.D., who reviewed plaintiff's medical records in 2017 appears not to have reviewed the 2017 X-ray of plaintiff's wrists (A.R. 214-225), another doctor later did. Specifically, Sai Nimmagadda, M.D., reviewed the 2017 X-ray of plaintiff's wrist (A.R. 235) in connection with his disability determination explanation. (A.R. 226-246). The ALJ found Dr. Nimmagadda's opinion "persuasive" and noted that Dr. Nimmagadda "opined" that plaintiff "could perform light exertional work." (A.R. 60).

As for the March 2019 X-ray, plaintiff seems to be suggesting that the ALJ cannot have had substantial evidence for his decision, because he did not ask a doctor to review that X-ray after it was taken. The Court disagrees. The X-ray was ordered by plaintiff's primary care doctor (A.R. 1042-1043), apparently due to a bout of bronchitis (A.R. 1094). This X-ray was performed after the hearing was scheduled but before the hearing occurred. The Court sees nothing in the hearing transcript that suggests that plaintiff or her attorney asked the ALJ to have the X-ray reviewed by a doctor. Nor did plaintiff, in her brief to the ALJ, either mention the 2019 X-ray or ask him to have the X-ray reviewed by a doctor. (A.R. 609-615). As the Seventh Circuit has been saying for nearly thirty years, an ALJ need not go back to the drawing board every time a claimant has another test; otherwise a decision might never be reached. *See Kendrick v. Shalala*, 998 F.2d 455, 456-57 & 458 (7th Cir. 1993) ("The difficulty is that no record is 'complete'—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Taking 'complete record' literally would be a formula for paralysis, undermining all of the objectives of simplified procedures. . . . How much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment."); *see also Keys v. Berryhill*, 679

Fed.Appx. 477, 481 (7th Cir. 2017) ("If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end.").

*Fibromyalgia*

Plaintiff also argues that the ALJ failed to account for her fibromyalgia in reaching his conclusion as to her residual functional capacity. Specifically, plaintiff argues the ALJ "failed to adequately consider her fibromyalgia and attempted to discount her subjective complaints of pain." (Plf. Brief at 13/Docket 12 at 13). The Court disagrees.

Plaintiff's theory seems to be that, because fibromyalgia does not have any objective tests, the ALJ erred in discussing the objective medical evidence. Plaintiff, however, did not seek disability benefits on the basis of fibromyalgia alone. If she had, then plaintiff's point about the dearth of objective tests for fibromyalgia might be a good one. She argued, however, that she had a number of impairments, including carpel tunnel syndrome, lower lumbar degenerative disease, chronic headaches, asthma, hypothyroidism, a left-arm deformity, fatigue, depression and anxiety. Thus, the fact that the ALJ considered the objective medical evidence of plaintiff's physical symptoms in relation to her subjective complaints is not evidence that the ALJ ignored her fibromyalgia. It is evidence that he considered her many alleged ailments. For example, plaintiff complains that the ALJ held her "normal gait" against her even though a person with fibromyalgia might have a normal gait. (Plf. Brief at 14/Docket 12 at 14). The ALJ, however, mentioned plaintiff's normal gait in connection with her tronchanteric bursitis (A.R. 49) and, because fibromyalgia has no listing, in connection with assessing whether plaintiff met an analogous listing (A.R. 52).

Second, the Court does not agree that the ALJ failed to consider plaintiff's fibromyalgia in assessing plaintiff's residual functional capacity. Plaintiff mentions pain as a symptom of

9

fibromyalgia, and the ALJ considered it. In fact, he spent pages of his decision discussing the extent of plaintiff's pain, and those discussions were supported by substantial evidence. With respect to the residual functional capacity, the ALJ accounted for plaintiff's "pain" by limiting her to "no climbing of ladders, ropes, scaffolds, or work at unprotected heights, or around dangerous moving machinery; and no more than occasional kneeling, crouching or crawling or climbing of ramps and stairs." (A.R. 60). He also accounted for "neck and shoulder pain" by limiting plaintiff to only "frequently reach[ing] bilaterally" and "occasionally reach[ing] overhead." (A.R. 60). The ALJ explicitly accounted for "fibromyalgia and myofascial pain syndrome" by concluding plaintiff must avoid exposure to extreme wetness, noise and vibration. (A.R. 60). Plaintiff does not say what other restrictions the ALJ should have added. Substantial evidence supports the ones he included.

Finally, the Court has reviewed the ALJ's assessment of plaintiff's residual functional capacity and finds that it is supported by substantial evidence.

## IV. CONCLUSION

For all of these reasons, the Court affirms the decision of the Commissioner. Accordingly, defendant's motion [18] for judgment is granted, and plaintiff's motion [11] for judgment is denied. Civil case terminated.

SO ORDERED.                            ENTERED: March 15, 2022

_____
JORGE L. ALONSO
United States District Judge